**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reynaldo Jesus Ledesma, | ) No. CIV 13-1117-TUC-LAB |
| Petitioner, | ) **ORDER** |
| vs. | ) |
| Charles L. Ryan; et al., | ) |
| Respondents. | ) |

Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on September 9, 2013, by Reynaldo Jesus Ledesma, an inmate confined in the Arizona State Prison Complex in Kingman, Arizona.  (Doc. 1)

Magistrate Judge Bowman presides over this action pursuant to 28 U.S.C. § 636(c). (Doc. 14)  The petition will be denied on the merits.

Summary of the Case

Ledesma was found guilty after a jury trial of "first-degree burglary, armed robbery, trafficking in stolen property, and four counts of aggravated assault with a deadly weapon or dangerous instrument."  (Doc. 17-1, pp. 2-3)  The trial court sentenced Ledesma to aggregate terms of imprisonment totaling eighteen years.  (Doc. 17-1, p. 3)

On direct appeal, Ledesma argued (1) the trial court "erroneously instructed the jury that the state had no burden to prove the firearm in []his case was not permanently inoperable," and (2) "there was insufficient evidence to support his armed-robbery conviction."  (Doc. 17-1, p.

3)  The Arizona Court of Appeals affirmed his convictions and sentences on June 17, 2011. (Doc. 17-1, pp. 2-10)  The Arizona Supreme Court denied review on February 23, 2012.  (Doc. 18-1, p. 65)

Previously, on June 28, 2011, Ledesma filed notice of post-conviction relief.  (Doc. 18-1, p. 67)  He argued in his petition that trial counsel was ineffective for (1) failing to move to suppress identifications based on the pawnshop video, (2) failing to suppress identifications at trial, (3) mishandling hearsay regarding George Hickman, (4) failing to question the allegation of armed robbery from Paul Romero,  (5) mishandling prejudicial comments made by Paul Romero, and (6) failing to move to sever the burglary counts from the pawnshop counts.  (Doc. 18-2, pp. 6-7)  He further argued appellate counsel was ineffective for failing to question the allegation of armed robbery from Paul Romero.  *Id.*

The trial court denied the petition on December 3, 2012.  (Doc. 18-2, pp. 43-52)  The Arizona Court of Appeals granted review but denied relief on April 1, 2013.  (Doc. 18-3, p. 21)  The Arizona Supreme Court denied review on August 8, 2013.  (Doc. 18-3, p. 25)

On September 9, 2013, Ledesma filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1)  He claims (1) the jury instructions failed to explain that the state had the burden to prove the firearm in his case was not permanently inoperable,  (2) the evidence was insufficient to prove armed robbery because the defendant had completed the theft by the time the gun was brandished,  (3) trial counsel was ineffective for failing to object to hearsay testimony from Tyna Ann Hickman, (4)  trial counsel and appellate counsel were ineffective for failing to challenge the allegation that Paul Romero was robbed because no property was taken from him,  (5)  trial counsel was ineffective for failing to address inflammatory comments made by Paul Romero, (6)  trial counsel was ineffective for failing to move to suppress identifications based on the viewing of the pawnshop video, (7) trial counsel was ineffective for failing to suppress identifications at trial,  and (8)  trial counsel was ineffective for failing to move to sever the burglary counts from the pawnshop counts.  (Doc. 1)

In their answer, the respondents argue Claims (1) and (2) are procedurally defaulted, but the remaining claims should be denied on the merits.  (Doc. 17)  Ledesma filed a reply arguing again the merits of his claims.  (Doc. 23)

Discussion

The writ of habeas corpus affords relief to persons in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  If the petitioner is in custody pursuant to the judgment of a state court, the writ will not be granted unless prior adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

A decision is "contrary to" Supreme Court precedent if the "state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003).  A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles to the facts of [the] case in a way that was not only incorrect or clearly erroneous, but objectively unreasonable." *Id.*  If the state court denied on the merits but did not explain its reasoning, this court must independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle*

1  *v. Morgan*,  313 F.3d 1160, 1167 (9ᵗʰ Cir. 2002), *cert. denied*, 539 U.S. 916 (2003).  If the

2  highest state court fails to explain its decision, this court looks to the last reasoned state court

3  decision.  *See Brown v. Palmateer*,  379 F.3d 1089, 1092 (9ᵗʰ Cir. 2004).

4          Federal habeas review is limited to those issues that have been fully presented to the state

5  court.  This so-called "exhaustion rule" reads in pertinent part as follows:

6          An application for a writ of habeas corpus on behalf of a person in custody
           pursuant to the judgment of a State court shall not be granted unless it appears
7          that – (A)  the applicant has exhausted the remedies available in the courts of the
           State. . . .

8  28 U.S.C. § 2254(b)(1)(A).  This rule permits the states "the opportunity to pass upon and

9  correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365

10  (1995)  (internal punctuation removed).

11          To be properly exhausted, the federal claim must be "fairly presented" to the state courts.

12  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971).  In other words, the state courts

13  must be apprised of the issue and given the first opportunity to rule on the merits.  *Id.* at 275-76.

14  Accordingly, the petitioner must "present the state courts with the same claim he urges upon the

15  federal courts."  *Id.*  "The state courts have been given a sufficient opportunity to hear an issue

16  when the petitioner has presented the state court with the issue's factual and legal basis."

17  *Weaver v. Thompson*, 197 F.3d 359, 364 (9ᵗʰ Cir. 1999).

18          In addition, the petitioner must explicitly alert the state court that he is raising a federal

19  constitutional claim.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995);  *Casey v. Moore*, 386 F.3d

20  896, 910-11 (9ᵗʰ Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005).  The petitioner must make the

21  federal basis of the claim explicit either by citing specific provisions of federal law or federal

22  case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882,

23  888 (9ᵗʰ Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly

24  analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9ᵗʰ

25  Cir. 2003) (en banc).

26          If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona,

27  he must present his claims to the state appellate court for review.  *Castillo v. McFadden*, 399

28

F.3d 993, 998 (9th Cir. 2005), *cert. denied*, 546 U.S. 818 (2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000).  If state remedies have not been exhausted, the petition may not be granted and ordinarily should be dismissed.  *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust.  28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons.  *Id.*

Procedural default may be excused if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998).  A fundamental miscarriage of justice results "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*,  477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986).

Claim 1:  Jury Instructions

In Claim 1, Ledesma argues the jury instructions failed to explain that the state had to prove the firearm in his case was not permanently inoperable, which relieved the state of its burden of proof.  *See* (Doc. 17-1, p. 6, n. 1)  This claim was raised on direct appeal.

"Due process requires that criminal prosecutions comport with prevailing notions of fundamental fairness and that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Clark v. Brown*,  442 F.3d 708, 714 (9th Cir. 2006)  (punctuation modified)  "When habeas is sought under 28 U.S.C. § 2254, failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable." *Id.*   If due process was violated, however, habeas relief is available only "if the flaw in the instructions had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth v. Pulido*, 555 U.S. 57, 58, 129 S.Ct. 530, 531 (2008).

The state argues first that this claim is procedurally defaulted because the court of appeals found that Ledesma failed to raise this claim before the trial court and reviewed it only for fundamental error. Assuming without deciding that the claim is not defaulted, the court finds it should be denied on the merits. *See* 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 1523-24 (1997); *see also Smith v. Ryan*, 2014 WL 2452902, * 10 (D.Ariz. 2014) (Where the state reviewed the defendant's claim for 'fundamental, prejudicial error,' federal habeas review was not barred because "the state's procedural rule is not independent of federal law.").

Ledesma's argument is based on the case, *State v. Rosthenhausler*, 147 Ariz. 486, 711 P.2d 625 (App. 1985). In *Rosthenhausler*, the court held "the state is not required to prove a firearm is not permanently inoperable when a defendant has presented no evidence of its inoperability." (Doc. 17-1, p. 5) In dicta, the court stated "that when a defendant does present evidence establishing a reasonable doubt as to a firearm's operability, the burden would shift to the state to disprove permanent inoperability." *Id*.

At trial, the state presented the following evidence:

> Paul R. was in his brother's two-story condominium when he heard "loud thumps" at the back door. He investigated and found the door broken open and a pickaxe on the floor. Paul then encountered Ledesma, who was holding a backpack while coming down the stairs. After Paul told him, "I'll give you a chance to put down what you got and get out," Ledesma pulled a gun from his pocket and pointed it at Paul. Ledesma then started "banging [the gun] around," which led Paul to conclude he "was trying to cock it back and work it." Paul fled, and Ledesma never fired the gun.

(Doc. 17-1, p. 3) Ledesma argues Paul's testimony is enough to establish a reasonable doubt as to whether the gun was operable.

The court of appeals, however, found that Paul's testimony established only that Ledesma was unable to operate the gun properly, not that it was inoperable beyond a reasonable doubt. This finding was supported by testimony from the gun's owner that, although he never fired the gun, "he had 'rack[ed] the chamber' when he bought it to confirm that it functioned." (Doc. 17-1, p. 6) The court further noted that "there was no evidence that the gun or any of its components was defective." *Id*. Accordingly, the court of appeals held that the trial court's

failure to give Ledesma's instruction did not violate his constitutional rights. (Doc. 17-1, p. 6 n. 1)

This court concludes the court of appeals was correct. Evidence that Ledesma was unable to operate another person's gun on one occasion in a stressful situation does not establish the gun was defective especially in light of testimony by the gun owner that the slide moved freely. Evidence introduced at trial did not establish a reasonable doubt as to a firearm's operability. Accordingly, Ledesma was not entitled to his instruction under state law and his due process rights were not violated. The decision of the court of appeals was not contrary to or an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d).

Claim 2:  Sufficiency of the Evidence

In Claim 2, Ledesma argues the evidence was insufficient to prove armed robbery because the defendant had completed the theft by the time the gun was brandished. Ledesma raised this claim in his direct appeal.

Again, the state argues this claim is procedurally defaulted because the court of appeals found that Ledesma failed to raise this claim before the trial court and reviewed it only for fundamental error. Assuming without deciding that the claim is not defaulted, the court finds it should be denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970). On review for sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original); *see also Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624 (1960) (A conviction completely lacking in evidentiary support violates the Due Process Clause.). Because this issue is raised in a petition for writ of habeas corpus, Ledesma is entitled to habeas relief only if the state court's decision on this matter was contrary

to, or an unreasonable application of the *Jackson* standard.  28 U.S.C. § 2254(d)(1);  *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

Ledesma argues the evidence was insufficient to prove robbery because he had already taken possession of the stolen items when he brandished the gun.  He argues he brandished the gun only to affect his escape citing *State v. Celaya*, 135 Ariz. 248, 660 P.2d 849 (1983).  The court does not agree.

The pertinent statute reads as follows:

A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

A.R.S. § 13-1902.  Here, the state produced evidence that after Ledesma took the victim's property, he was accosted by Paul Romero, who told him to relinquish what he had taken and leave.  Instead, Ledesma produced a gun and pointed it at Paul Romero causing him to flee.

The evidence was sufficient to prove that Ledesma threatened force against Paul Romero not just to effect his escape but also to prevent Paul Romero from offering any resistance to his retaining the stolen property.  Ledesma was holding the stolen backpack and attempting to leave when he was challenged.  He knew Paul Romero wanted him to relinquish the stolen goods and would have an opportunity to take them back when Ledesma passed him on his way out.  Ledesma then produced the gun and threatened Paul Romero with it thereby preventing him from resisting Ledesma's intention to retain the stolen property.  Accordingly, the evidence was sufficient to prove the elements of the offense beyond a reasonable doubt.

Ledesma further argues the evidence was insufficient to prove robbery of the gun because "[i]f the defendant did possess [the] gun, then his use of it could not be to obtain control of it." (Doc. 1, p. 7)  The robbery statute, however, applies where the defendant threatens force to prevent resistance to the defendant's *retaining* the stolen item, not just where the defendant threatens force to coerce surrender of the item.  The decision of the court of appeals denying this claim was not contrary to or an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d);  (Doc. 17-1, pp. 7-10)

Claim 3:  Hearsay

In Claim 3, Ledesma argues his trial counsel was ineffective for failing to object to hearsay testimony given by Tyna Ann Hickman.  (Doc. 1, p. 8)  This claim was first raised in Ledesma's post-conviction relief petition and is properly exhausted.  (Doc. 18-2, p. 6); (Doc. 18-3, pp. 4-5)  To the extent Ledesma attempts to broaden this claim to encompass his underlying Sixth Amendment right to a fair trial, the court finds this new facet to his claim was never raised before, could not be raised now, and is procedurally defaulted. *See* (Doc. 18-3, pp. 4-5); Ariz.R.Crim.P. 32.2(a)(3); *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013).

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).  Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.*  To show prejudice, the petitioner  "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal citation omitted).

At trial, the state offered testimony of the burglary at the condominium and of Ledesma's attempt to sell the jewelry at a pawnshop.  (Doc. 18-2, pp 43-44)  After the burglary, Eddie Romero, the owner of the condominium, Tyna Ann Hickman, his girlfriend, and George

Hickman, Tyna's father, visited several pawnshops in an attempt to find some of the stolen items. *Id.* In one of the pawnshops, they found some of Tyna's jewelry and Ledesma himself attempting to pawn it. *Id.* When confronted, Ledesma announced he had a gun and fled the pawnshop. *Id.* Eddie and George tried to follow him, but Ledesma pointed a gun at them. *Id.* Tyna testified that George raised his hands at this point. *Id.* Eddie, however, testified that they did not raise their hands. *Id.*

Ledesma argues his trial counsel was ineffective for failing to object to Tyna's hearsay testimony that George raised his hands. As the trial court[1] explained, however, George's gesture was not hearsay.

Hearsay is a "statement" that "a party offers in evidence to prove the truth of the matter asserted in the statement." Ariz.R.Evid. 801(a), (c)(2). A gesture could constitute a statement. Here, however, assuming George's gesture did constitute a statement, it was not offered to prove the truth of the matter asserted in the statement.

George's gesture could have constituted the statement, "I will not follow you" or "I am not armed." But, it was not offered to prove that George did not intend to follow Ledesma or that George was not armed. It was offered to prove that Ledesma pointed a gun at George and George was afraid he might be shot if he didn't make some sort of conciliatory gesture. George's gesture was not offered to prove the truth of the matter asserted in the gesture. It was not hearsay, and counsel's alleged failure to object on hearsay grounds was not deficient performance. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) ("[T]rial counsel cannot have been ineffective for failing to raise a meritless objection.").

Ledesma further argues counsel was ineffective for failing to call George to testify about what happened when they followed Ledesma out of the pawnshop. Ledesma believes that George might have testified, as Eddie did, that he did *not* raise his hands contrary to Tyna's testimony. And if that testimony had been introduced, Ledesma would not have been convicted

---

[1] The court discusses the reasoning of the state *trial* court because the state court of appeals explicitly adopted the reasoning of the trial court. (Doc. 18-3, pp. 22-23)

of aggravated assault against George.  The trial court found that counsel's failure to call George to testify was not deficient performance.  The court agrees.

If George had testified, he would have been one more witness explaining that Ledesma was in the pawnshop trying to sell Tyna's jewelry and fled when confronted.  Counsel's desire to avoid this cumulative production of damaging testimony was sound trial strategy.  Moreover, aside from his unsupported assertions, Ledesma provides no evidence that George's testimony would differ from Tyna's.  Ledesma cannot show trial counsel's performance was deficient or that he suffered prejudice from counsel's failure to introduce George's testimony.  The decision of the court of appeals denying this claim was not contrary to or an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d).  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 48-49)

Claim 4:  Robbery of the Houseguest

In Claim 4, Ledesma argues trial counsel and appellate counsel were ineffective for failing to challenge the allegation that Paul Romero was robbed because no property was taken from him.  This claim was first raised in Ledesma's post-conviction relief petition and is properly exhausted.  (Doc. 18-2, pp. 6, 13);  (Doc. 18-3, pp. 5, 14-15)

Ledesma argues Paul Romero was not robbed because he did not own any of the items stolen.  The trial court explained, however, that robbery does not require that the person threatened with force be the owner of the property.  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 49-50)  If so, then there would be no armed robbery at a bank because the teller does not own the money taken.  This court is bound by a state court's interpretation of its own laws.  *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.");  *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003).  Accordingly, failure to challenge this count based on the fact that Paul Romero did not own any of the property taken was not error and Ledesma's counsel could not have been ineffective.  The decision of the court of appeals

denying this claim was not contrary to or an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d).  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 49-50)

Claim 5:  Inflammatory Comments by Paul Romero

In Claim 5, Ledesma argues trial counsel was ineffective for failing to address inflammatory comments made by Paul Romero.  This claim was first raised in Ledesma's post-conviction relief petition and is properly exhausted.  (Doc. 18-2, pp. 6, 13-14);  (Doc. 18-3, pp. 5, 15-16)

Ledesma objects to certain testimony given by Paul Romero at trial.  Twice, Paul Romero called Ledesma a "bastard."  Once, he stated Ledesma's tattoos "looked like he [was] just straight out of the pen."  (Doc. 18-2, p. 50)  This statement was previously given to the police, and trial counsel moved *in limine* that it be precluded.  The trial court agreed, but although the state agreed to talk to its witness, the statement came out again at trial.  Counsel objected, and the trial court sustained the objection instructing the jury to disregard the prison tattoo statement.

Ledesma argues counsel was ineffective for failing to object to the first "bastard" statement (he did object the second time) and for failing to move for a mistrial after the prison tattoo statement.

The trial court found counsel was not ineffective because the court would not have granted a mistrial had a motion been made.  Moreover, the trial court found the statements were unlikely to have unduly influenced the jury in light of the court's instruction and in light of the "overwhelming evidence of Defendant's guilt."  (Doc. 18-2, p. 51)  This court agrees.

Trial counsel's failure to move for a mistrial did not result in prejudice because the motion would have been denied.  Isolated inflammatory statements are unlikely to influence a jury's deliberation.  Counsel was not ineffective.  The decision of the court of appeals denying this claim was not contrary to or an unreasonable application of clearly established Federal law. 28 U.S.C. § 2254(d).  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 50-51)

Claims 6 and 7:  Suppression of Out-of-Court Identification and Failure to Request _Willits_ Instruction

In Claims 6 and 7, Ledesma argues trial counsel was ineffective for failing to move to suppress out-of-court identifications and failing to request a _Willits_ instruction.  (Doc. 1, p. 11)  This claim was first raised in Ledesma's post-conviction relief petition and is properly exhausted.  (Doc. 18-2, pp. 6, 8-12);  (Doc. 18-3, pp. 4, 8-12)  To the extent Ledesma attempts to broaden this claim to encompass his underlying due process right to be free from unduly suggestive out-of-court identification testimony, the court finds this facet of his claim was never raised before, could not be raised now, and is procedurally defaulted.  _See_ (Doc. 18-3, pp. 4-5); Ariz.R.Crim.P. 32.2(a)(3);  _Gulbrandson v. Ryan_,  738 F.3d 976, 993 (9th Cir. 2013).

After the burglary, Eddie Romero, the owner of the condominium, Tyna Ann Hickman, his girlfriend, and George Hickman, Tyna's father, visited several pawnshops in an attempt to find some of the stolen items.  (Doc. 18-2, pp 43-44)  In one of the pawnshops, they found some of Tyna's jewelry and Ledesma himself attempting to pawn it.  _Id_.  When confronted, Ledesma announced he had a gun and fled the pawnshop.  _Id_.  Eddie and George tried to follow him, but Ledesma pointed a gun at them.  _Id_.  Ledesma was arrested in the area a short time later.  _Id_.

At some point, police officer Brown responded to the scene and determined from the pawnshop owner that video camera evidence might be available.  (Doc. 18-2, p. 5)  He viewed the video and told those in the pawnshop that the man arrested was in the video.  (Doc. 18-2, p. 24).  Apparently, the man in the video was wearing different clothes than Ledesma wore when he was arrested.  (Doc. 18-2, pp. 8-9)

At some point, George Hickman was taken to make a one-on-one identification of the arrestee.  _Id_.  He identified Ledesma as the man in the pawnshop.  (Doc. 18-2, pp. 5, 24)

The pawnshop owner told Brown that he would cooperate in making a copy of the video.  (Doc. 18-2, p. 5)  Brown did not follow up, however, for more than a month.  _Id_.  By that time, the video had been taped over.  _Id_. The video was not preserved by the state and was not disclosed to the defense.  (Doc. 18-2, p. 44)

1
2
3

Six days after the robbery, Eddie Romero and Tyna Ann Hickman were shown a photo lineup by South Tucson Detective Gardner. (Doc. 18-2, p. 5) They both identified Ledesma's photo and testified to that effect at trial. (Doc. 18-2, p. 47)

4
5
6
7
8
9
10
11
12

In these claims, Ledesma argues trial counsel was ineffective for failing to move to suppress identifications given by Tyna Ann Hickman and Eddie Romero. Evidence presented at trial of an out-of-court identification may violate due process if the identification procedure created "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Id*. "[T]he central question, [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id*. at 199.

13
14
15
16

Ledesma is not entirely clear about what counsel failed to do. Counsel did, in fact, file a motion to suppress the photo lineup identification and the show-up identification by George Hickman. (Doc. 18-2, pp. 46-47) The trial court held an evidentiary hearing and denied the motion. *Id*.

17
18
19
20
21

Ledesma seems to be arguing that the photo lineup identifications by Tyna Ann Hickman and Eddie Romero given at trial were tainted by the viewing of the pawnshop video. (Doc. 1, p. 11) He argues the state's failure to preserve the video should have resulted in the suppression of the photo lineup identification. Apparently, he believes counsel should have raised this argument at the suppression hearing. He does not, however, connect the dots.

22
23
24
25
26
27

Evidence of an out-of-court identification may be suppressed at trial if it was obtained through an unduly suggestive procedure. Ledesma argues the video, had it been preserved, would have shown that the man in the pawn shop was wearing different clothes than he was wearing when he was arrested. Assuming he is correct, he fails to explain why the viewing of the video by Brown would have caused Tyna Ann Hickman and Eddie Romero to mistakenly identify his picture in the photo lineup.

28

1
2
3
4
5

In a similar vein, Ledesma complains about the showup identification made by George Hickman without explaining how that incident affected the photo lineup.  Ledesma has not identified what, if anything, was unduly suggestive about the photo identification procedure. Accordingly, he cannot show counsel's performance in this matter was deficient or a better argument would have caused a different outcome.

6
7
8
9
10

The video, had it been preserved, could have been some evidence tending to show that the witnesses' identification was *incorrect*.   It was not, however, evidence that their out-of-court identification was obtained through an unduly suggestive procedure.  The decision of the court of appeals denying this claim was not contrary to or an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d);  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 46-47)

11
12

Ledesma further argues counsel should have asked for a *Willits* instruction because the pawnshop video was not preserved.

13
14
15
16
17
18
19
20
21
22

A *Willits* instruction "allows the jury to make an inference against the State when the State destroys, causes to be destroyed or allows to be destroyed, material evidence." (Doc. 18-2, p. 45);  *see State v. Willits*, 96 Ariz. 184, 191, 393 P.2d 274, 276 (1964).  The instruction will be given only if the defendant shows the state "failed to preserve material and reasonably accessible evidence having a tendency to exonerate him" and "[t]he failure prejudiced him." (Doc. 18-2, p. 46)  The trial court found that even if counsel asked for a *Willits* instruction, it would not have been given because Ledesma could not show the pawnshop video had "a tendency to exonerate him." *Id*.  Ledesma argued only that the video would have shown that the man in the pawnshop had on different clothes than he was wearing when he was arrested. He did not argue the man in the pawnshop video was not him.

23
24
25
26

Counsel's alleged failure to move for a *Willits* instruction did not result in prejudice because his motion would have been denied.  The decision of the court of appeals denying this claim was not contrary to or an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d).  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 45-46)

27

28

Claim 8: Failure to Sever

- 15 -

In Claim 8, Ledesma argues trial counsel was ineffective for failing to move to sever the burglary counts from the pawnshop counts.   (Doc. 1)

In Arizona, joinder of counts is allowed if the charges are of similar character, are based on the same conduct, or are part of a common scheme or plan.   (Doc. 18-2, p. 51); Ariz.R.Crim.P. 13.3(a).  Here, the trial court held that if counsel had made such a motion to sever, it would have been denied because evidence of the burglary and evidence from the pawnshop were both part of the complete picture of the defendant's activities.  (Doc. 18-2, pp. 51-52)

Failure to file a fruitless motion cannot be ineffective assistance.  The decision of the court of appeals denying this claim was not contrary to or an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d).  (Doc. 18-3, pp. 22-23); (Doc. 18-2, pp. 51-52)

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases, requires that in habeas cases "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Here, the court declines to issue a certificate of appealability because the petitioner has not "made a substantial showing of the denial of a constitutional right," as required under 28 U.S.C. § 2253(c)(2).  Reasonable jurists would not find the court's conclusions and ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on September 9, 2013, by Reynaldo Jesus Ledesma is DENIED.

IT IS FURTHER ORDERED denying the petitioner a certificate of appealability.

The Clerk is directed to prepare a judgment and close the case.

DATED this 3rd day of November, 2014.

_Leslie A. Bowman_

Leslie A. Bowman
United States Magistrate Judge

- 16 -